## Shumway *versus* Phillips.

1. Possession of land is sufficient to protect the possessor against all but the owner of the legal title. A trespasser cannot gainsay such right of possession.

2. A naked possession is sufficient to recover in ejectment against one who entered afterwards without title.

ERROR to the Common Pleas of *Erie county.*

This was an action of ejectment by George Phillips *v.* Bradford Shumway, for a piece of land lying *north* of donation tract No. 1986, and running east and west. Miles, a surveyor, who had made the original survey of the 10th Donation District, being requested, in 1817 or 1818, to run the line of tract 1986, made a survey. Some of the corners of the tract could not be found. From the survey which he then made, it appeared that there was a strip of vacant land about 70 perches wide, lying north of the donation tracts, and

between them and the state line as marked before the purchase of the triangle on Lake Erie. This, or a part of it, was in dispute in this case.

The following was stated by the judge in his charge to the jury:

"Dena Drake testifies that his father came to this country in 1817, having bought from a man by the name of Potter, donation tract No. 1986. That *the next year* he went to Mr. Miles, who was a surveyor and had been in employment under the government in running out the donation lands, to ascertain the lines of that tract. That Miles did run the lines, and run what is now called the southern line, *as the north line of the tract*—and at the same time suggested to Drake, the father, that the land north was open for settlement. That *he did settle on it, and cleared land and built upon it.* That some time prior to 1828 he had cleared up to *the line run by Miles,* the southern line, until the time of his death, when he left his son Francis Drake, who continued in possession and occupancy up to the same line, and in 1833 sold to the witness Dena Drake, by deed which is given in evidence, dated 22d January, 1833. That he the witness continued to occupy to the same line and sold to Daniel Shepherd by deed, dated '24th December, 1841, and a deed is shown from Shepherd to plaintiff, dated June, 1851. There is nothing more shown in relation to the donation tract No. 1986. No deed from *Potter* to Drake—no evidence that Potter had any title to it, and no title shown in any one, or whether the tract, as such, was claimed or improved by the Drakes or any one since."

In the counter statement it was said that Paul Drake settled on the Gore, claiming to the line which Miles had marked as the north line of 1986; built a house on it in 1818, in which he continued to reside till his death in 1828. That in 1818 he *cleared to the line and put his fence on it.*

Also that in 1848, whilst Shepherd was in possession, claiming to the line and fence as aforesaid, the defendant entered and took possession *north* of the fence and line, and built a house a few perches north of it, claiming six roods as part of lot 1986. That shortly afterwards Shepherd sold to Phillips, the plaintiff, all his right and title in the premises; all of the fence, except a few rods next the house of the defendant, then standing on the line where Paul Drake placed it.

On the trial the following points were submitted on the part of the *plaintiff*:

If Paul Drake (having in 1817 or 1818 settled on land north of and adjoining donation tract No. 1986 as vacant, and designing to obtain a title from the Commonwealth) got William Miles to trace the line between him and said donation tract, claimed up to the line so traced, and died in possession, having in part cleared to, and

[Shumway v. Phillips.]

put his fence on said line, and was succeeded by his son Francis, who, claiming through his father, continued such possession and claim till he sold in 1833 to Dena Drake; and if said possession and claim were continued by those claiming through said Drake till 1848, when defendant entered north of the line, these, with other undisputed facts in the case, entitle plaintiff to recover up to the line so run by Miles.

2. That if the *plaintiff* and those under whom he claims have had actual continuous possession of the land in controversy, claiming and using it as their own for twenty-one years preceding the entry of the defendant, he has a good title to recover by the statute of limitations.

3. That when the claimants of adjoining tracts have long respectively occupied up to and acquiesced in a line as the division line between them, clear evidence should be required that such line is not on the true line, and also where the true original dividing line *is, in order* to overthrow such occupancy; and this is so though such occupancy may have been somewhat short of twenty-one years.

On the part of the defendant the following points were submitted, viz. :

1. If the jury believe from the evidence that the Messrs. Drakes owned donation tract No. 1986 at the time Miles run the line on the north side of said tract, and then commenced an improvement on the gore, and in making their improvement built their fence over on and including within said improvements a part of said tract, the statute of limitations does not commence to run so long as the said tract was occupied by the said Drakes; and there is no evidence given showing when the Drakes parted with their possession to said tract No. 1986.

2. To give title by twenty-one years' adverse possession, the possession must be open, hostile, and adverse; and it is incumbent upon the party so claiming to show the commencement of such hostile and adverse possession.

3. The plaintiff in this case cannot avail himself of the possession of the Drakes and Shepherd, if they ever did hold the disputed piece of land adversely for twenty-one years; the conveyance to the plaintiff bounds him on the south by the north line of tract No. 1986, and his claim must be confined to the true line of said lot.

The charge of the Court was, in part, as follows :

"The issue to be tried in this case, arises on an ejectment brought by plaintiff against defendant, for a small strip of land claimed by the plaintiff as a part of a tract lying north of the donation tracts and between them and the old state line, called the Gore. The *defendant* claims it as part of donation tract No. 1986, but shows no title either in himself or any one else to that tract.

Vol. X.—20

[Shumway *v.* Phillips.]

"The first question for the jury then is, whether the south line or the north as presented on the draft in evidence is the true line between the donation tract No. 1986 and the .gore. If the evidence satisfies the jury that the southern line is the true line, the plaintiff is entitled to recover, having shown a continued occupancy and possession under an actual settlement, commenced in 1818, and no title or pretence of title in any one else to the tract north of the donation land.

"If the testimony satisfies you that the northern line on the draft is the true north line of tract No. 1986, then these and other matters are to be taken into consideration.

＊        ＊        ＊        ＊        ＊        ＊        ＊

"If the evidence then establishes the northern line as the true line of lot No. 1986; then arises the question presented in the defendant's first point, and indeed all the others involving the statute of limitations. Whatever the decision might be as between *the owners* of donation tract No. 1986 and the occupant situated as Drake is shown in the testimony here, or those claiming and holding under him, and claiming to hold one tract north of the donation land by settlement and the donation tract itself under an alleged purchase, and occupying and cultivating part of both tracts under the same fence and apparently one improvement, it is not necessary to determine in this case. The defendant here showing no title to donation tract No. 1986, has not put himself in a position to raise the question, and therefore the question is ruled in the negative. To the second point it is answered, that it is correct as a general position; and in this case, if the plaintiff has shown a continued and unbroken possession and occupancy in the land in dispute in those under whom he claims, it is to be presumed to be adverse or hostile as against one showing no title; and to the 3d point it is answered that if Shepherd, and those under whom he held, claimed the southern line as the line of the tract, the deed to Phillips would pass to him all the rights he had to the strip, if it ever were such a part of the donation tract originally, as against one showing no title. The plaintiff's points are answered in the affirmative, with the explanation in the general charge."

Verdict was rendered for the plaintiff.

It was assigned for error: 1. The Court erred in answering the plaintiff's points in the affirmative. 2. The Court erred in answering the defendant's points in the negative. 3. In the general charge so far as the same related to the statute of limitations.

*Marshall*, for the plaintiff in error, defendant below.—In relation to the part of the charge as follows: The defendant "showing no title to donation tract No. 1986, has not put himself in a posi-

tion to raise the question, and therefore the point (meaning the defendant's point) is ruled in the negative:" It was said, that the evidence showed the defendant *in actual possession* of tract No. 1986, and that his house and other buildings were actually on the disputed strip; supposing the defendant showed no *title* to said tract 1986, *the plaintiff* stood in no better condition. He did not pretend to show *title* to any part of said tract other than the statute of limitations. Then they were both intruders; and to entitle the plaintiff to recover in ejectment against the defendant, in such case he was bound to show the necessary facts to constitute a title under the statute of limitations, therefore the defendant was entitled to an affirmative answer to his points: Huey *et al. v.* Smith, 3 *Barr* 353.

*Babbitt*, for defendant in error.—It was of no consequence whether the land in controversy was part of lot No. 1986, or not; the prior claim to, and possession of it as "the gore," by those through whom plaintiff claimed, and whose entire right and title thereto he had purchased, being a sufficient title for him to recover upon against the defendant, who, though forbidden, intruded forcibly, in 1848, (without title) on the actual and long-continued possession and rights which the plaintiff had bought; and this is so, even if such possession had been less than twenty-one years.

A naked possession is good title to recover in ejectment against one who put the plaintiff out, and can show no better title: 2 *Ser. & R.* 57, Woods *v.* Lane. A wrongdoer or disseisor may recover in ejectment against a subsequent intruder, without showing twenty-one years' possession: 1 *Barr* 295, Hoey *v.* Furman. Prior possession, short of twenty-one years, is *primâ facie* evidence of right, sufficient to recover on against a subsequent possession: 10 *Johns.* 339, Smith *v.* Dorillard.

But though not necessary, the plaintiff's title by the statute of limitations was shown. An actual continued and undisputed possession and claim of the land in controversy from 1818 to 1848, was proved, the occupants during all that time claiming it up to a distinct line and fence, as "the gore," and not as part of lot 1986.

But it is said that Paul Drake, during part of the same time, was claiming and occupying lot 1986; and that during the time he was claiming and occupying said last-mentioned tract, the statute did not run, because a man cannot hold adversely to himself.

We answer that the possession of the two Drakes of lot 1986 was adverse to all the world but themselves; and as the *defendant* does not claim through them, it was adverse to him and all those whose title he may have, if he has any, so long as it was continued; and so also of Paul's possession of "the gore" during the same

[Shumway v. Phillips.]

time. But further; as the two possessions were of distinct parts, separated by a distinct line and fence, and claimed by distinct titles, the possession of the "gore" would be adverse to that of lot 1986, even in a contest between the two titles. 9 *Watts* 567, Brown *v.* M'Kinney, decides that occupation up to a fence on each side of a town lot, each party claiming the land on his own side as his own, gives an incontestible right, whether the fence be on the right line or not.

It was said that it appeared that defendant had resided on 1986 for several years prior to his intrusion on the plaintiff, and that there was no evidence of his making any claim until 1848, that the division fence was not on the right line. He built his house north of the line *after* his intrusion. He never had any other buildings there.

The opinion of the Court was delivered by

KNOX, J.—Had the defendant shown title in *himself to donation* tract No. 1986, the decision of the cause would have turned upon the question whether the land in controversy was within the lines of that survey, and if so, whether the plaintiff below had acquired title by the statute of limitations.

The defendant, however, showed no title, and the first possession gave the better right. This was indisputably in the plaintiff. He and those under whom he claimed had the actual possession of what was called the gore, the subject of dispute, for many years before the defendant entered.

This possession of the plaintiff was sufficient to protect him against all but the owner of the legal title. The defendant was a trespasser, and could not gainsay the plaintiff's right.

That a naked possession is sufficient to recover in ejectment against one who has put the plaintiff out without title, is fully established by the cases of Woods *v.* Lane, 2 *Ser. & R.* 57, and Hoey *v.* Furman, 1 *Barr* 295.

Judgment affirmed.